
**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ex. rel.<br>JENNIFER STUART MILLER,<br><br>STATE OF TENNESSEE ex. rel.,<br>JENNIFER STUART MILLER,<br><br>COMMONWEALTH OF VIRGINIA, ex.<br>rel., and JENNIFER STUART MILLER,<br><br>     Plaintiff-Relator,<br><br>vs.<br><br>EAST TENNESSEE RECOVERY, PLLC,<br>CHAMBLESS RAND JOHNSTON, and<br>EMMALEA JOHNSTON,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No.: 2:18-CV-171
Greer/Corker

**COMPLAINT**

Relator, Jennifer Stuart Miller ("Relator"), by and through counsel and on behalf of the United States of America, the State of Tennessee, the Commonwealth of Virginia, the Commonwealth of Kentucky and on behalf of Jennifer Stuart Miller, individually, hereby files this *qui tam* action to recover damages and civil penalties arising from the Defendants' actions in violation of the False Claims Act, 31 U.S.C. § 3729-3733, the Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181 et seq., and Virginia Fraud Against Taxpayers Act, Va. Code Ann. §§ 8.01-216.1 *et seq*., and, in support thereof, would show unto this Honorable Court as follows:

## I.     NATURE OF THE CASE

1.     This action is brought under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b), the *qui tam* provisions of the Tennessee Medicaid False Claims Act, Tenn.

Code Ann. § 71-5-183(b), the *qui tam* provisions of the Virginia Fraud Against Taxpayers Act Va. Code Ann. § 8.01-216.5.

2.      The False Claims Act and its state law counterparts provide that any person who knowingly submits a false or fraudulent claim to the Federal Government or State Government, for payment and approval is liable to the Government for a civil penalty of: not less than $5,500 and no more than $11,000 for each claim made after October 23, 1996, but before August 1, 2016, plus three times the amount of the false claim; not less than $10,781 and no more than $21,563 for each claim made on or after August 1, 2016, but before February 3, 2017, plus three times the amount of the false claim; and not less than $10,957 and no more than $21,916 for each claim made on or after February 3, 2017, plus three times the amount of the false claim.   31 U.S.C. § 3729.   Relator brings these claims for Defendants' unlawful practices in the State of Tennessee, the Commonwealth of Virginia, and the Commonwealth of Kentucky.

## II.      JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. § 1345 (United States as Plaintiff), and 31 U.S.C. §§ 3729-3733 (False Claims Act).

4.      In addition, this Honorable Court may exercise judicial efficiency over claims under Tennessee, Virginia, and Kentucky's statutory codes and common laws, as all state-related claims contained herein arise out of a common nucleus of operative facts.

5.      Pursuant to Rule 19 of the Federal Rules of Civil Procedure, the State of Tennessee is a party needed for just adjudication since the State of Tennessee is entitled to recover pursuant to Tenn. Code Ann. § 71-5-181, *et. seq.* and/or Tenn. Code Ann. § 4-18-101, *et. seq.*

2

6.     Pursuant to Rule 19 of the Federal Rules of Civil Procedure, the Commonwealth of Virginia is a party needed for just adjudication since the Commonwealth of Virginia is entitled to recover pursuant to the Virginia Fraud Against Taxpayers Act, Va. Code Ann. §§ 8.01-216.1 *et seq.*,

7.     This Court has personal jurisdiction over Defendants as they operate a medical practice and do business in the Eastern District of Tennessee.

8.     Venue lies within the Eastern District of Tennessee as well because the acts at issue and the fraudulent practices alleged occurred in Johnson City, Tennessee.

9.     Relator alleges that, during her period of employment with Defendant East Tennessee Recovery, PLLC ("ETR"), and likely both before and after, ETR, and its owners/members, Chambless Rand Johnston ("Dr. Johnston") and his spouse, Emmalea Johnston ("Ms. Johnston") (collectively "Defendants"), have willfully, knowingly and fraudulently:

A.     Treated numerous Medicaid patients (and also Medicare and other governmental insured patients) in group settings and individually in the name of addressing chemical dependency/addiction; and

B.     Billed patients for services not actually performed and/or impossible to perform in the time indicated; and

C.     Billed patients for services performed by untrained and/or unlicensed and/or unqualified providers; and

D.     Billed patients for services by Relator that she never performed, approved or signed off on; and

E.     Billed patients using incorrect and/or even fraudulent Common Procedure and Terminology ("CPT") codes; and

3

F.      Engaged in other fraudulent activities as described herein.

10.      Relator would estimate Defendants billed Medicaid (Tennessee, Virginia, and Kentucky insured/patients) and Medicare hundreds of thousands of dollars per year in fraudulent claims both before and likely after Relator's time with ETR as an employee.

## III.      THE PARTIES

11.      Relator, Jennifer Stuart Miller, is a licensed professional counselor ("LPC") licensed by the State of Tennessee's Department of Health (Tennessee License No. 3107).  As an LPC licensed by the State of Tennessee, the Relator possesses a "Practitioner Profile" from the Tennessee Department of Health that remains clear of any disciplinary actions or liability claims, a copy of which is attached hereto as **Exhibit 1.**  Relator is also a National Certified Counselor ("NCC") and a Certified Clinical Mental Health Counselor ("CCMHC").

12.      Relator received her Associate's Degree from East Tennessee State University ("ETSU") in 1984, her Bachelor's Degree from Milligan College in 2008, and her Master's Degree from Liberty University in 2012.

13.      As noted above, Relator maintains an active and clean license in the State of Tennessee, as well as a history free of any form of fraudulent acts/crimes.

14.      Relator has devoted her professional life to helping those who struggle with drug addiction, even working at one point as an LPC for the Carter County Drug Prevention Coalition in Elizabethton, Tennessee.

15.      After working for the Carter County Drug Prevention Coalition, Relator worked as an LPC for Defendant ETR. (Since working for ETR, Relator has continued working in the mental health field as a Behavioral Health Case Manager.)

4

16.     According to ETR's website (www.restorationandwellness.com), it provides "treatment education and those who need help fighting the disease of addiction." This includes delivering "multiple behavioral services to [its] patients including group meetings, counseling and help connecting them with employment opportunities and teaching job interview skills." ETR claims its patients "must be treated holistically through the mind, body and spirit." And ETR recognizes that "medication assisted therapy is crucial in the first stages of a lifelong path of sobriety and recovery."[1]

17.     ETR is both owned and operated by Ms. Johnston and Dr. Johnston. According to Dr. Johnston's Tennessee Department of Health "Practitioner Profile," a copy of which is attached hereto as **Exhibit 2**, he attended medical school at the America University of the Caribbean. Dr. Johnston is a Medical Doctor ("MD"), yet he has no board certifications or hospital privileges of any kind noted within his "Practitioner Profile."

18.     In treating and supervising the so many drug addicts at ETR, Dr. Johnston alleges to help the most vulnerable of patients. According to ETR's website, "a board certified addictionologist will evaluate patients for replacement therapy with the use of Buprenorphine." The plan is to "taper off of such medication assistance over 6-18 months based on progress in the program." The website also lists medications it uses/prescribes to allegedly treat addiction: Suboxone; Subutex, Zubsolv; Bunaveil; Vivitrol; and Naltrexone. ETR advertises such services for treating opioid addiction, cocaine addiction, methamphetamine addiction, and even the treatment for pregnant addicts. Please find sample pages from ETR's website attached hereto as collective **Exhibit 3**.

---

[1] ETR's website also claims that they offer an "IOP" (Intensive Outpatient Program) and a "PHP" (Partial Hospitalization Program), but that is simply not true.

19.     Based on Relator's time with ETR, a large percentage of its patients – who are largely poor and/or unemployed drug addicts – are often insured by Medicaid programs such as TennCare.  According to ETR's website, it accepts patients from Virginia Medicaid, TennCare, Kentucky Medicaid, Medicare, and other carriers.

20.     Ms. Johnston is a licensed medical provider (Family Nurse Practitioner) to Relator's knowledge,[2] but Ms. Johnston is also known to be ETR's office manager/administrator. Whatever her formal title, Ms. Johnston clearly supervises and controls the practice and its employees with her husband, Dr. Johnston.

## IV.     SOURCE OF ALLEGATIONS

21.     Relator states that all allegations are based on evidence obtained directly from Relator independently and though her own labor and efforts.  Additionally, Relator voluntarily made pre-filing disclosures to the government as to the factual basis of her claims.  Therefore, Relator remains an original source of information within the meaning of the False Claims Act, 31 U.S.C. § 3730(e)(4)(B).

22.     Relator, Jennifer Stuart Miller, seeks through this action to recover damages and civil penalties arising from Defendants' false and fraudulent practices on behalf of the United States, the State of Tennessee, the Commonwealth of Virginia and the Commonwealth of Kentucky.

23.     Many of the alleged acts at issue occurred in the Eastern District of Tennessee, including Johnson City, Tennessee.

## V.     NARRATIVE OF PARTICULARS

---

[2] Despite Ms. Johnston's lack of any known medical license, Relator has seen billing records identifying Ms. Johnston as the ETR treating provider.

6

24.     Relator started working as an LPC with ETR in August 2017. She was originally told that ETR's plan was to have her develop an intensive outpatient program for addicts, but this never really developed. Instead, Relator spent a large majority of her time at ETR conducting one-on-one therapy sessions with addiction patients. She started out doing two to three such sessions a day, but ended up handling eight or even nine therapy sessions during her typical 8:00 a.m. to 5:00 p.m. weekday shift. (Relator also led group therapy sessions, but this only occurred less than a handful of times during her entire span as an ETR employee.)

25.     As noted above, Relator commonly worked 8:00 a.m. to 5:00 p.m. while with ETR, always clocking in and clocking out at arrival, departure, and during lunch breaks. As Relator understood it, many if not all of ETR's employees clocked in and clocked out per company policy, thus meaning Defendants should possess time records indicating when all employees were actually present at ETR.

26.     For a typical one-on-one therapy session, Relator would bill for a one-hour intake (CPT Code 90791), a 30 minute session (CPT 90832), or a 45 minute session (CPT Code 90834). Relator would circle the appropriate code(s) on an ETR form, then sign her name indicating approval.

27.     Though Relator cannot name each and every ETR employee during her time with the company, Relator does know she was the only licensed behavioral health professional during that span. Relator can recall three social workers, three to four front desk/administrative employees, two triage nurses, and two specimen collectors. Those co-workers were in addition to the ETR leadership team: Jennifer Blanton (Billing) ("Ms. Blanton"); Ms. Johnston (Administrator/Office Manager); and Dr. Johnston (Physician/Owner).

28. For all intents and purposes, Dr. Johnston and Ms. Johnston were in charge, with Ms. Blanton handling billing and some other managerial tasks.

29. In May 2018, Ms. Blanton said something to Relator that both startled and worried her. Essentially, Ms. Blanton asked, "Guess how much money we collected under your license last month?" When Relator did not know, Ms. Blanton went on to say, "$40,000." Knowing that she might bill around the $30 range to Medicaid patient for a 30 minute session, Relator was immediately shocked by that figure. It was simply impossible that she had either seen or signed off on enough patients to even approach $40,000 in one month.

30. Ms. Blanton's statement came at a time when Relator had already been worrying about what she saw as Dr. Johnston's increasingly heavy patient schedule. When Relator started with ETR, Dr. Johnston was seeing somewhere around four to five patients per hour according to his schedule. But, by the time of Relator's resignation from ETR, Dr. Johnston was scheduled to see well in excess of 70 patients per day (while leaving the office each day by around 3:00 p.m.).

31. The most tragic part of Relator's case is that it also involves her adult son, Matthew David Miller ("Matthew"). Matthew, like many good people who became addicted to opioid pain medication, started out as just someone with an injury. As things spiraled, it became clear to Relator that Matthew needed help, and he sought it from ETR and Dr. Johnston.

32. After later gaining access to Matthew's ETR records (via a properly executed HIPAA release), Relator was finally able to better understand Dr. Johnston's heavy patient load and how ETR could have possibly collected $40,000 in one month under her license. These were not only Relator's co-workers, they were people she trusted to care for and treat her son. And Defendants clearly breached such trust repeatedly, as they did with countless other sons, daughters, fathers and mothers who came to ETR seeking help.

8

33.     In the following sampling pulled from Matthew's ETR "Claims and Payments" statements, Relator can show numerous overbilling and/or outright fraudulent billing examples:

(a)     February 27, 2018:  When seeing Dr. Johnston, Matthew is billed using CPT Code 99204 (New Patient – Typical 45 minutes) and CPT Code 99408 (SBIRT – Typical 15-30 minutes).  Matthew has never seen Dr. Johnston for anything approaching a one hour visit;

(b)     March 20, 2018:  When seeing Dr. Johnston, Mathew is billed using CPT Code 99213 (Office Visit – Typical 15 minutes) and twice using CPT Code 99407 (Smoking Cessation Counseling – Typical $\geq$ 10 minutes). Matthew is a smoker and was prescribed nicotine patches by Dr. Johnston, but Matthew was never counseled for smoking at ETR;

(c)     March 27, 2018:  When seeing Dr. Johnston, Matthew is billed using CPT Code 99214 (Office Visit – Typical 25 minutes) and using CPT Code 90833 (Individual Therapy – At least 16 minutes).  Again though, Matthew only saw Dr. Johnston at this point for brief meeting/check-ins, and certainly not for anything approaching 40 minutes.

Copies of the foregoing billing records are attached hereto as collective **Exhibit 4**.

34.     When viewing the foregoing billing examples, it is important to again note that Dr. Johnston's schedule would frequently show him as seeing well in excess of 70 patients a day before 3:00 p.m.  If he was working straight through with no lunch or breaks for seven hours, that would have given Dr. Johnston an average of six minutes to see each patient.  And with Relator's review of Matthew's records, we see that Dr. Johnston was certainly billing for sessions that are supposed to take well over 30 minutes to complete.  If we just used 30 minutes

as the average time spent with only 70 daily patients, Dr. Johnston would have needed 35 hours each day to complete his billed appointments. These were desperate, often poor people who wanted/needed help, and they were instead being pushed through an assembly line so Defendants could reap fraudulent rewards from both public and private insurance carriers.[3]

35. But finding Dr. Johnston's "impossible day" billing practices was not Relator's most startling discovery after reviewing Matthew's ETR records. During her time at ETR, as noted earlier, Relator spent most of each day in one-on-one therapy sessions with addiction patients. She rarely handled group therapy sessions and she certainly never led group or individual therapy sessions with her son as a patient. That would be both unproductive and unethical under the standards of Relator's profession. Yet Matthew's ETR records contain entries showing Relator as providing him with group therapy (CPT Code 90853) and individual therapy (CPT Code 90791) treatment. Relator even knows that Ms. Johnston, who is not a licensed behavioral health practitioner, has billed using behavioral health related CPT codes (such as 90833).

36. Importantly, Relator was the only ETR employee during her time there who was actually licensed and qualified to bill for group therapy sessions. Relator was aware during her time that ETR social workers (and even interns) would commonly hold group sessions/discussions with patients, but Relator was unaware that (a) those sessions were being billed as group therapy and (b) those sessions were being billed using Relator's name and license number.

37. As Matthew's records confirm, Defendants were fraudulently using Relator's name and license number to bill patients for group therapy that Relator neither led nor monitored. As those group therapy sessions can be billed for numerous patients at one time,

_____

[3] This is not even accounting for the fact that Dr. Johnston would often see 15-20 patients per hour.

10

Case 2:18-cv-00171-JRG-CRW   Document 1   Filed 10/10/18   Page 10 of 24   PageID #: 10

Relator finally started to understand how Ms. Blanton could claim $40,000 in monthly billing using Relator's license.

38.     Even before she performed a thorough review of Matthew's ETR records, however, Relator knew things were not right at ETR and decided she needed to quit. In May 2018, Relator provided three weeks' notice to Defendants before leaving ETR for good. Already suspecting that her name and license were being used improperly, Relator took it upon herself to send letters to various public and private carriers so they would know she left ETR, copies of which are attached hereto as collective **Exhibit 5**. Relator's letters specifically noted that "no claims should be filed under [her] NPI number for services provided after 5:00 p.m. on June 8, 2018."

39.     Also in May 2018, Relator made an anonymous report of possible fraud by Defendants using the TennCare fraud hotline (1-800-433-3982). Relator found that number using a web search, and thought some type of report should be made. Around the same time period, Relator also sent an e-mail reporting possible Medicaid fraud to the Virginia Medicaid Fraud Control Unit (MFCU_mail@oag.state.va.us.).

40.     On her last day with ETR in June 2018, Ms. Johnston told Relator they were sorry to see her go. Relator was never fired or disciplined by Defendants; instead, she left after having noticed and reported Defendants' fraudulent activity. She simply could not tolerate it.

41.     The more time Relator spent discussing ETR and its billing with Matthew, and the more Relator compared Matthew's ETR records with her time there, the angrier Relator became at Defendants. With that, she no longer felt it was enough to make anonymous reports.

11

42.     In August 2018, Relator made an official report to the Tennessee Bureau of Investigation, a copy of which is attached hereto as **Exhibit 6**.  Therein, Relator summarized the above allegations and also wrote:

> Our state and federal government have been defrauded out of hundreds of thousands, if not millions, of dollars and some of our most vulnerable citizens have been exploited by Dr. Johnston and his wife.  I fear retaliation by the Johnstons and am seeking protection under the whistle-blower program.

43.     On August 22, 2018, Relator met with TBI Special Agent, Scotty Ferguson, and Virginia Medicaid Fraud Investigator, Erin Thompson, in Johnson City, Tennessee, to elaborate on her prior reports.  They were joined in that meeting by two other agents, but Relator did not obtain their names.

44.     During her time with ETR and thereafter, Relator has repeatedly shown her desire to simply do the right thing.  When she realized what was likely going on, Relator left and notified numerous carriers of her final day.  Around the same time, she reported Defendants' fraud to both Tennessee and Virginia.  And she has since followed up on the same both by name and in-person.

46.     Relator believes Defendants have made themselves wealthy off the backs of poor and often uneducated addicts.  She wants Defendants' actions to stop and she sincerely hopes relevant state and federal authorities will share in that desire.

## COUNT ONE

47.     Relator re-alleges paragraphs 1 through 46 and incorporates them here by reference as if fully set forth.

48.     In violation of 31 U.S.C. § 3729(a)(1), Defendants knowingly or acting with reckless disregard or deliberate ignorance of its truth or falsity have presented or caused to be

presented false or fraudulent claims for payment or approval to the United States, the State of Tennessee, the Commonwealth of Virginia and/or the Commonwealth of Kentucky.

49.      By virtue of these false or fraudulent claims on the part of Defendants, the United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky suffered damages and therefore are entitled to treble damages under the respective False Claims Act, as determined at trial, plus civil penalties of $5,500 to $11,000 for each violation.

**COUNT TWO**

50.      Relator re-alleges paragraphs 1 through 49 and incorporates them here by reference as if fully set forth.

51.      In violation of the respective False Claims Acts, Defendants knowingly or acting with reckless disregard or deliberate ignorance of their truth or falsity made, used, or caused to be made or used false records or false statements, material to false and fraudulent claims to the United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky in order to have false and fraudulent claims paid.

52.      By virtue of using or making false records or false statements, Defendants caused the United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky to have suffered damages and are entitled to treble damages under the respective False Claims Acts, as determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation.

**COUNT THREE**

53.      Relator re-alleges paragraphs 1 through 52 and incorporates them here by reference as if fully set forth.

54.     This is a claim for the recovery of monies paid by the United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky to Defendants as a result of mistaken understandings of fact.

55.     The false claims that Defendants submitted to the United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky were paid based upon mistaken or erroneous understandings of material facts.

56.     The United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky acting in reasonable reliance on the truthfulness of the claims and the truthfulness of Defendants' certifications and representations, paid Defendants certain sums of money to which Defendants were not legally entitled and Defendants are thus liable to account and pay such amounts, as determined at trial, to the United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky.

## COUNT FOUR

57.     Relator re-alleges paragraphs 1 through 56 and incorporates them here by reference

as if fully set forth.

58.     This is a claim for recovery of monies by which Defendants have been unjustly enriched.

59.     By directly or indirectly obtaining federal and state funds to which Defendants were not legally entitled, Defendants were unjustly enriched and are liable to account and pay such amounts, as determined at trial, to the United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky.

## COUNT FIVE

60.     Relator re-alleges paragraphs 1 through 59 and incorporates them here by reference

as if fully set forth.

61.     This is a claim for disgorgemental of illegal profits earned by Defendants as a result of statutory violations and in failing to make refunds of overpayments due to the United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky.

62.     Defendants concealed their illegal activities though false statements, false claims, false records, and their failure to abide by their statutory and regulatory duties to disclose the existence of such overpayments.

63.     The United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky did not detect Defendants' illegal conduct.

64.     The United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky request that the Court exercise its equitable and statutory powers to require Defendants to disgorge all illegal profits earned as a result of Defendants' statutory violations, and to impress a resulting trust on all real estate and other assets purchased by said Defendants with monies that should have been refunded and paid to the U.S. government, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky.

65.     The United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky request a full accounting of all revenues, as well as interest, received by Defendants during all relevant times.

15

## COUNT SIX

66.     Relator re-alleges paragraphs 1 through 65 and incorporates them here by reference as if fully set forth.

67.     This is a claim for recoupment of monies unlawfully paid by the United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky to Defendants contrary to statutes and regulations.

68.     The United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky paid Defendants certain sums of money to which Defendants were not entitled and Defendants are thus liable under the law of recoupment to account and return such sums, as determined at trial, to the United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky.

## COUNT SEVEN

69.     Relator re-alleges paragraphs 1 through 68 and incorporates them here by reference as if fully set forth.

70.     Defendants made material and false representations in the submission of claims for reimbursement to the Federal government, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky and concealed overpayments with the intention that the United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky be deprived of refunds to which they were legally entitled and/or to pay money for which they were not legally obligated.

71.     Had the true state of facts been known to the United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky,  they would

have not made the payments to the Defendants and/or would have sought recovery of overpayments as provided by law.

72.     As a result of the conduct of Defendants, the United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky have been damaged in an amount to be determined at trial.

## COUNT EIGHT

73.     Relator re-alleges paragraphs 1 through 72 and incorporates them here by reference as if fully set forth.

74.     This is a claim for common law conversion on behalf of the United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky.

75.     As a result of the conduct of Defendants in making false claims and in failing to make refunds or overpayments, Defendants exercised an unauthorized right of ownership over funds belonging to the United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky and have deprived them of these sums permanently and for an indefinite time inconsistent with the rights of the United States, the State of Tennessee, the Commonwealth of Virginia, and/or the Commonwealth of Kentucky for which the Defendants owe compensatory damages and punitive damages.

## COUNT NINE

76.     The Relator re-alleges the allegations of paragraphs 1 through 75 as though specifically set out.

77. In violation of Tenn. Code Ann. § 71-5-182(a)(1)(A), and/or Tenn. Code Ann. §§ 4-18-101, *et seq.* Defendants knowingly or acting with reckless disregard or deliberate ignorance

of its truth or falsity presented or caused to be presented false or fraudulent claims for payment or approval to the State of Tennessee and the United States.

78.     By virtue of these false or fraudulent claims on the part of Defendants, the State of Tennessee and the United States suffered damages and therefore are entitled to multiple damages under the Tennessee False Claims Acts, as determined at trial, plus civil penalties as determined by 31 U.S.C. § 3729, as adjusted, for each violation.

## COUNT TEN

79.     Relator re-alleges paragraphs 1 through 78 and incorporates them here by reference as if fully set forth.

80.     In violation of Tenn. Code Ann. § 71-5-182(a)(1)(B) and/or Tenn. Code Ann. §§ 4-18-101, *et seq.*, Defendants knowingly or acting with reckless disregard or deliberate ignorance of its truth or falsity, either made, used, or caused to be made or used, false records or statements, including false certifications and representations by Defendants upon submission or resubmission of false claims for reimbursements under Medicaid and TennCare, for the purpose of obtaining payment or approval of false or fraudulent claims from the State of Tennessee and the United States.

81.     By virtue of using or making false records or false statements, Defendants caused the State of Tennessee and the United States to suffer damages and the State of Tennessee and the United States are therefore entitled to treble damages under the Tennessee Medicaid False Claims Act, as determined at trial, plus civil penalties as determined by 31 U.S.C. § 3729, as adjusted, for each violation.

## COUNT ELEVEN

82.     Relator re-alleges paragraphs 1 through 81 and incorporates them here by reference as if fully set forth.

83.     In violation of Tenn. Code Ann. § 71-5-182(a)(1)(D) and/or Tenn. Code Ann. § 4-18-101, *et seq.*, Defendants knowingly or acting with reckless disregard or deliberate ignorance of its truth or falsity, either made, used, or caused to be made or used false records or false statements, including false certifications by Defendants in submitting claims, to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State of Tennessee and the United States.

84.     By virtue of using or making false records or false statements, Defendants caused the State of Tennessee and the United States to suffer damages and the State of Tennessee and the United States are therefore entitled to treble damages under the Tennessee Medicaid False Claims Act, as determined at trial, plus civil penalties as determined by 31 U.S.C. § 3729, as adjusted, for each violation.

## COUNT TWELVE

85.     The Relator re-alleges the allegations of paragraphs 1 through 75 as though specifically set out.

86.     In violation of Va. Code Ann. § 8.01-216.3(A)(1), Defendants knowingly presented or caused to be presented a false or fraudulent claims for payment or approval to the Commonwealth of Virginia and the United States.

87.     By virtue of these false or fraudulent claims on the part of Defendants, the Commonwealth of Virginia and the United States suffered damages and therefore are entitled to

treble damages under the Virginia Fraud Against Taxpayers Act, as determined at trial, plus civil penalties as determined by 31 U.S.C. § 3729, as adjusted, for each violation.

## COUNT THIRTEEN

88.    Relator re-alleges paragraphs 1 through 87 and incorporates them here by reference as if fully set forth.

89.    In violation of Va. Code Ann. § 8.01-216.3(A)(2), Defendants knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, including false certifications and representations by Defendants upon submission or resubmission of false claims for reimbursements under Medicaid and Virginia Medicaid, for the purpose of obtaining payment or approval of false or fraudulent claims from the Commonwealth of Virginia and the United States.

90.    By virtue of using or making false records or false statements, Defendants caused the Commonwealth of Virginia and the United States to suffer damages and the Commonwealth of Virginia and the United States are therefore entitled to treble damages under the Virginia Fraud Against Taxpayers Act, as determined at trial, plus civil penalties as determined by 31 U.S.C. § 3729, as adjusted, for each violation.

## COUNT FOURTEEN

91.    Relator re-alleges paragraphs 1 through 90 and incorporates them here by reference as if fully set forth.

92.    In violation of Va. Code Ann. § 8.01-216.3(A)(3), Defendants conspired to commit a violation of Va. Code Ann. § 8.01-216.3(A)(1) and (A)(2) by knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval and/or made, used, or caused to be made or used, false records or statements material to false or fraudulent claims,

including false certifications and representations by Defendants upon submission or resubmission of false claims for reimbursements under Medicaid and Virginia Medicaid, for the purpose of obtaining payment or approval of false or fraudulent claims from the Commonwealth of Virginia and the United States.

93.      By virtue of conspiring to present, or causing to be presented, a false or fraudulent claim for payment or approval use and/or make false records or false statements, Defendants caused the Commonwealth of Virginia and the United States to suffer damages and the Commonwealth of Virginia and the United States are therefore entitled to treble damages under the Virginia Fraud Against Taxpayers Act, as determined at trial, plus civil penalties as determined by 31 U.S.C. § 3729, as adjusted, for each violation.

## PRAYER FOR RELIEF

WHEREFORE, Realtor demands on behalf of the United States, the State of Tennessee, the Commonwealth of Virginia, and the Commonwealth of Kentucky and prays that judgment be entered in her favor against Defendants as follows:

1.      To receive all damages, including treble damages, punitive damages, and penalties as are permitted by law, together with such further relief as may be just and appropriate.

2.      For the Court to award full damages for unjust enrichment, and order recoupment, for damages and recovery of such amounts by which Defendants were unjustly enriched or which Defendants retained illegally, together with interest, costs, expenses, and all other relief that may be just and proper, including for the Court to declare a resulting trust on all real estate and other assets of Defendants that were acquired by Defendants with money that should have been refunded to the Federal Government, the State of Tennessee, the Commonwealth of

21

Virginia, and/or the Commonwealth of Kentucky and award for compensatory and punitive damages.

3.     For the Court to order for an accounting of all revenues unlawfully obtained or retained by Defendants and for the disgorgement of such funds, together with further equitable relief as may be just and proper, including that the Court declare a resulting trust on all real estate and other assets acquired by Defendants, that were acquired with monies that should have been returned to the government.

4.     For the Defendants be ordered to cease and desist from submitting false claims and to comply fully with the statutes and regulations of the United States, the State of Tennessee, the Commonwealth of Virginia, and the Commonwealth of Kentucky.

5.     For Defendants to be barred from participating in Federal and State funded health care programs.

6.     Relator further requests that she be awarded the maximum amount permitted pursuant to 31 U.S.C. § 3730(d) and Tenn. Code Ann. § 71-5-183, *et seq.* and Tenn. Code Ann. § 4-18-101, *et seq.* and Va. Code Ann. § 8.01-216.7.7.     Relator requests all costs, including court costs, expert fees, investigative expenses, and attorney's fees incurred by Relator in the prosecution of this suit.

8.     Relator requests that she and the United States, the State of Tennessee, the Commonwealth of Virginia, and the Commonwealth of Kentucky be granted any and all other relief that the Court deems appropriate and proper.

9.     A JURY TRIAL IS HEREBY DEMANDED ON ALL ISSUES

_____

Chris W. McCarty (BPR #025551)
CMccarty@lewisthomason.com
LEWIS, THOMASON, KING, KRIEG &
WALDROP, P.C.
One Centre Square, Fifth Floor
620 Market Street
P.O. Box 2425
Knoxville, TN 37901
(865) 546-4646

_____

Link A. Gibbons (BPR #022799)
Link@linkgibbonslaw.com
LAW OFFICE OF LINK A. GIBBONS
P.O. Box 2248
Morristown, TN 37816
(865) 839-0990

## CERTIFICATE OF SERVICE

I certify that, pursuant to the terms and requirements of the United States False Claims Act, 31 U.S.C. § 3730(b)(2) and Fed. R. Civ. P. 4(d)(4), true and correct copies of the foregoing were served on October 10, 2018, by personal delivery and/or certified mail, return receipt requested, addressed to the following:

Jefferson B. Sessions, III
United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001
**Attn: United States False Claims Act filing**

J. Douglas Overbey, Esq.
United States Attorney for the Eastern District of Tennessee
800 Market Street, Suite 211
Knoxville, TN 37902
**Attn: United States False Claims Act filing**

Herbert H. Slatery, III
Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
**Attn: Tennessee Medicaid/Tenncare False Claims Act**

and

Mark R. Herring
Virginia Attorney General
202 North Ninth Street
Richmond, VA 23219
**Attn: Virginia Fraud Against Taxpayers Act**

_____
Chris W. McCarty (BPR #025551)